# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

DEBRA F. DYER,           )
                           )
      Plaintiff,         )
                           )
    vs.                 )        Case No. 2:08CV9MLM
                           )
MICHAEL J. ASTRUE,      )
                           )
      Defendant.     )

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Debra F. Dyer ("Plaintiff") for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 15. Defendant filed a brief in support of the Answer. Doc. 19. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c)(1). Doc. 16.

## I.
## PROCEDURAL HISTORY

On March 22, 2005, Plaintiff filed an application for disability benefits alleging a disability onset date of March 4, 2005. Tr. 43. The application was denied and a hearing was held before an Administrative Law Judge ("ALJ") on April 11, 2007. Tr. 262. The ALJ issued a decision on May 3, 2007, denying Plaintiff benefits. Tr. 11-21.

Plaintiff filed a Request for Review with the Appeals Council. Tr. 10. On November 29, 2007, the Appeals Council denied Plaintiff's Request for Review. Tr. 6-9. As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## PLAINTIFF'S TESTIMONY

At the hearing before the ALJ Plaintiff testified that she was forty-one years old; she is a high school graduate; that she has about a year of college credits; that she went to cosmetology school; and that she did not finish cosmetology school. Tr. 265.

Plaintiff further testified that she has circulatory problems and degenerative disc disease in her neck; that she last worked in July or August 2005; that her last job was as a lending specialist[1]; that she also worked as a loan officer; that she was working as a lending specialist when she had a vein stripping operation in April 2005; that she returned to her job as a lending specialist after the vein stripping operation; that her job as a loan officer required that she "sit at a desk a lot" and that she drive " a lot ... because [she] had several offices to cover"; that when she "drove down the road" as a loan officer her "leg would go totally numb" and she could not "feel [her] leg on the gas or the brake." Tr. 265-68, 271.

Plaintiff also testified that at the time of the hearing she could sit without problems for about thirty minutes and then she has to "get [her] leg up"; that at the hearing her leg was hurting her and she was "sure it[] [was] turning blue"; that her leg swells and becomes discolored up to her waist; that the swelling and discoloration occur "just down [her] right leg for some reason"; that in a typical day when her leg becomes inflamed she elevates it "for sometimes two to three hours"; that during this period of elevating her leg she does not go to the bathroom; that Dr. Chapman is the doctor who has treated her for the condition in her legs; that she had not been able to see Dr. Chapman because she did not have income or insurance; and that she has also seen Dr. Conley for her condition. Tr. 268-70.

---

[1]     Plaintiff described her job title in her last job as a residential lending specialist in a Work History Report. Tr. 77, 81.

Plaintiff said that, due to degenerative disc disease, she has pain when she tries to lift up her hands or pick up anything; that she "tried to lift a gallon of milk and it's throwed me out"; that lifting her grandchildren who weigh "30 pounds, 20 pounds" causes her problems; that her neck problem causes her to have difficulty with moving her head side to side; that she can move her head up and down; and that she cannot lift her arms "overhead." Tr. 271-72.

Plaintiff further said that she drives "very short distances"; that her hands "go numb" when she drives; that she lives with her sister; that her sister helps her with grocery shopping; and that her mother helps her with the laundry, does grocery shopping for her, drives her long distances, and cooks for her. Tr. 271-74.

Plaintiff testified that she has problems sleeping; that she is supposed to take Ambien; that she is not taking Ambien because she can not afford it; that she is taking over-the-counter sleep medications; that she is taking Advair for chronic bronchitis; and that Advair is helping. Tr. 272-73.

In a Work History Report, dated June 30, 2006, Plaintiff stated that as a loan officer she processed loan applications; that she used a computer, fax, copier, phone, printer, and adding machine; that each day in this job she walked and stood 1.5 hours, sat 5 hours, handled, grabbed or grasped big objects 8 hours, reached 2.5 hours, and wrote, typed or handled small objects 6.5 hours; that the heaviest thing she lifted was 20 pounds; and that she frequently lifted 10 pounds. Tr. 77.

The Work History Report further states that in her job as a residential lending specialist Plaintiff originated and processed mortgage and construction loans; that she used a computer, printer, copier, and multiline phone system; that each day in this job she walked 1 hour, stood 1 hour, sat 6 hours, handled, grabbed or grasped big objects 7.5 hours, reached 2.5 hours, wrote, typed or handled small objects 7.5 hours, and did not kneel, crouch or crawl; that she carried a laptop computer to and

from the office; that the heaviest thing she lifted was 20 pounds; and that she frequently lifted 10 pounds. Tr. 81.

## III.
## MEDICAL RECORDS

Plaintiff has set forth the substance of her medical records in the Brief in Support of Complaint. Additionally, the court notes the following:

Dr. Lucas, who conducted a psychiatric evaluation of Plaintiff, reported on March 15, 2005, that Plaintiff's orientation was intact; that her mood was moderately depressed; that her thinking was coherent; that her current recall, at about five minutes, was "4 out of 4"; that at Axis I, the diagnosis was major depression, single episode; and that Plaintiff was to call in a week and return in two weeks. Tr. 160-61.

Dr. Humphrey reported on April 25, 2005, that Plaintiff presented for surgery and that the impression on this date was symptomatic right lower extremity varicosities. Tr. 226. Records of Boone Hospital Center reflect that on April 25, 2005, Plaintiff had a "right saphenofemoral junction ligation and division" and "17 right lower extremity micro phlebecomies"; and that hemostasis was achieved at each wound. Tr. 227.

A Physical Residual Functional Capacity ("RFC") Assessment completed by P. Kaiser on May 3, 2005, states that Plaintiff has the ability to lift twenty pounds occasionally and ten pounds frequently; that she can stand and/or walk at least two hours in an eight-hour workday; that she can sit for a total of about six hours in an eight-hour workday; and that her ability to push and/or pull is limited in her extremities. The Physical RFC Assessment further states that Plaintiff can climb, balance, crouch, and crawl occasionally; that she can frequently stoop and kneel; that she has no manipulative, visual or communicative limitations; and that the only environmental limitation she has

is that she should avoid concentrated exposure to fumes, odors, dusts, and gases as a result of "PVD and right piriformis spasm/right leg." Tr. 178-85.

A Psychiatric Review Technique form completed by G.C. Maddox, Ph.D., on May 4, 2005, states that Plaintiff has depression; that she has no limitation in regard to restriction of daily activities, maintaining concentration, and episodes of decompensation; that she has a mild limitation in regard to maintaining social functioning; that there is insufficient evidence to establish the presence of criteria for a Listing. Tr. 186-99.

Dr. Humphrey reported on June 22, 2005, that Plaintiff was "feeling much better"; that her wound was "just about closed"; that Plaintiff's "leg was feeling much better"; and that Plaintiff was to return on a "p.r.n. basis." Tr. 218.

Sheila Bennett, R.N., reported on July 18, 2005, that Plaintiff said that she could not tolerate thigh-high stockings dispensed to her in June; that Plaintiff felt "as though if she tried a waist high" with the same pressure it "may lessen her symptoms"; and that "for now, we will try" a combination of options in this regard. Tr. 219.

Dr. Cunningham reported on August 1, 2005, that Plaintiff smoked a half pack of cigarettes a day; that Plaintiff's "range of motion was zero in flexion and extension, lateral bending, and rotation secondary to severe cervical pain"; that Plaintiff's motor strength was 5/5 in the biceps, triceps, wrist flexors and extensors and interossei; that her grip strength was "full and equal"; that she had "3/5 motor strength in the deltoid musculature bilaterally"; that her "deep tendon reflexes were 2+ and equal the biceps, triceps, and brachioradialis"; that "sensation was intact to light touch"; and that x-rays showed that the vertebral bodies were maintained and that "on open mouth view the dens was centered and intact." Tr. 254.

Dr. Cunningham reported on August 29, 2005, that a myelogram and CAT scan of Plaintiff's back showed that there did "not appear to be any cord compression and no gross compromise to the exiting nerve roots at those levels"; that Plaintiff said that she does "fine during the day" and when she "lies down at night [] she develops severe neck pain which has been unbearable without the use of sleeping pills"; that Plaintiff said if she uses sleeping pills she "gets by and gets a reasonable night's sleep, though when she wakes up in the morning her neck is very sore"; that he recommended physical therapy and an anti-inflammatory for Plaintiff's "degenerative disc at 4-5"; that Plaintiff needed to stop smoking; that he did not think Plaintiff was a surgical candidate; and that he was giving Plaintiff a return appointment. Tr. 251.

Records from Dr. Cunningham's office, dated September 21, 2005, reflect that Plaintiff was a "no show" on that date. Tr. 251.

Records from Dr. Cunningham's office, dated November 30, 2005, reflect that Plaintiff was "agreeable to trying P.T. now as she continu[ed] to have neck pain." Tr. 251.

## IV.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do

basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)). Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug.26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production

shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen,

830 F.2d 878, 882 (8th Cir. 1987). <u>See also</u> <u>Onstead v. Sullivan</u>, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. <u>Krogmeier</u>, 294 F.3d at 1022 (internal citations omitted). <u>See also</u> <u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell v. Apfel</u>, 147 F.3d 659, 661 (8th Cir. 1998)); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dept. of Health, Educ.& Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result

in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir.

1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d

882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell</u>, 892 F.2d at 750.

# V.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. <u>Onstead</u>, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. <u>Cox</u>, 495 F.3d at 617; <u>Krogmeier</u>, 294 F.3d at 1022.

Plaintiff contends that the ALJ made no explicit findings regarding the exertional and non-exertional demands of Plaintiff's past relevant work before concluding that she has the RFC to perform past relevant work; that the ALJ did not cite the Dictionary of Occupational Titles regarding the physical demands of Plaintiff's past relevant work; and that the ALJ did not properly consider Plaintiff's past relevant work.

**A.    ALJ's Consideration of Plaintiff's Alleged Mental Impairment:**

Plaintiff contends that the ALJ failed to properly consider both her exertional and non-exertional limitations. SSR 83-10, 1983 WL 31251, at *6, defines a non-exertional impairment as "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for activities." SSR 83-10, 1983 WL 31251, at *7, defines non-exertional limitation as "[a]n impairment-caused limitation of function which directly affects capability to perform work activities other than the primary strength activities."

In the matter under consideration, the ALJ considered the evidence of record, including evidence relevant to Plaintiff's alleged mental impairment, prior to finding that she has the RFC to perform her past relevant work as a residential lending specialist. First, in regard to Plaintiff's alleged mental impairment, the ALJ considered that Dr. Lucas, a psychiatrist, diagnosed Plaintiff with *moderate single* episode depression in March 2005. The court notes that Dr. Lucas further reported that Plaintiff's thinking was *coherent* and that her recall was "4 out of 4."

Second, in regard to Plaintiff's alleged mental impairment, the ALJ properly considered that Plaintiff only saw Dr. Lucas once; that Plaintiff failed to keep an appointment with Dr. Lucas; that Plaintiff never had any subsequent psychiatric treatment; and that she has "never been referred for formal treatment to a psychiatrist, psychologist, or other mental health professional. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996)); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991) (holding that a claimant's seeking limited medical treatment is inconsistent with claims of disabling pain); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

Third, in regard to Plaintiff's alleged mental impairment, the ALJ considered that while there was some mention of depression in Dr. Chapman's records,

> [Plaintiff's] basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been significantly impaired on any documented long-term basis. There has been no documented serious deterioration in her personal hygiene or habits, daily activities or interests, effective intelligence, reality contact, thought process, memory, speech, mood and affect, attention span, insight, judgment, or behavior patterns over any extended period of time. ...
>
> ...
>
> There is no evidence of [Plaintiff's] having a mental impairment or combination of mental impairments that meets or equals the criteria of any impairment

listed in Sections 12.02-12.10 of Appendix 1, pursuant to the mental impairment evaluation required by 20 C.F.R. 404.1520a. [Plaintiff] has no restrictions of mental activities of daily living or of maintaining [] social functioning; and has no recorded or credible instances of deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere. There is no credible evidence of [Plaintiff's] having any marked, extreme or even moderate inability to perform these functions independently, appropriately and effectively, and on a sustained basis. There are no recorded episodes of decompensation resulting in a loss of adaptive functioning.

Tr. 19-20.

The court notes that Plaintiff reported that "most of the time [she is] OK with [her] attention span"; that she is average at following written instructions; that she has no problems in getting along with authority figures; and that she handles changes in her routine "just fine." Tr. 92-93.

The ALJ's analysis as described above is consistent with the Regulations. The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. §404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms and findings to determine if a mental impairment exists. 20 C.F.R. §404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms and laboratory findings. 20 C.F.R. §§ 404.1520a(b)(1). Only if a mental impairment is found must the ALJ proceed to analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R. § 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of functioning which are deemed essential to work. 20 C.F.R. §404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3). Only after considering the relevant factors did the ALJ find

that "in terms of mental functioning, [Plaintiff] has no limitations or no more than a minimal limitation on her ability to do basic work activities." Tr. 20. The court finds that the ALJ followed the sequential analysis set forth in the Regulations upon evaluating Plaintiff's alleged mental impairment and that this analysis is based on substantial evidence on the record.

Fourth, in regard to Plaintiff's alleged mental impairment, the ALJ considered that at the hearing Plaintiff "displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance." Tr. 19. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), the ALJ's observations of the claimant's appearance and demeanor during the hearing is a consideration. See Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations."). As such, the ALJ properly considered Plaintiff's demeanor at the hearing.

In conclusion, the court finds that the ALJ's consideration and findings regarding Plaintiff's alleged mental impairment is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.    Plaintiff's Exertional and Other Non-Exertional Limitations:**

As stated above, the ALJ considered the evidence of record prior to determining that Plaintiff has the RFC to perform her past relevant work as a residential lending specialist. The court has addressed the ALJ's consideration of Plaintiff's alleged mental impairment, an alleged non-exertional limitation. The court will further address the ALJ's consideration of Plaintiff's other alleged exertional and non-exertional limitations.

First, in regard to Plaintiff's vein problem, the ALJ considered that there was "hardly any mention in the medical records of right leg pain after" July 18, 2005. Also, Plaintiff told Dr.

Cunningham in August 2005 that she does "fine during the day." See Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003) (holding that the ALJ properly considered that medical records showed that the claimant's pain decreased one month after he first reported it and that the medical records did not mention complaints of headache).

Second, the ALJ considered that the record reflects that Plaintiff continued to work throughout most of 2005, even after her operation in April, despite her claim of being disabled and that there was nothing in her records to explain why she suddenly stopped working again in November 2005. Tr. 18. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148-49 (8th Cir. 2001). "Working generally demonstrates an ability to perform a substantial gainful activity." Goff, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)); Goswell v. Apfel, 242 F.3d 793, 798 (8th Cir. 2001). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity. Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

Third, the ALJ considered that no doctor who examined or treated Plaintiff placed, stated, or implied she is totally disabled and that no such doctor has placed any specific long-term limitations on Plaintiff's ability to stand, sit, walk, bend, lift, carry, or do other exertional activities. Tr. 18. A record which contains no physician opinion of disability detracts from a claimant's subjective complaints. See Reney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005); Anderson v. Shalala, 51 F.3d 777, 780 (8th Cir. 1995); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th

Cir. 1987); <u>Fitzsimmons v. Mathews</u>, 647 F.2d 862, 863 (8th Cir. 1981); <u>Kovach v. Apfel</u>, 119 F. Supp. 2d 943, 967 (E.D. Mo. 2000).

Fourth, the ALJ considered that Plaintiff has had no surgery or inpatient hospitalizations since her vein stripping in April 2005 and that she has not been referred to physical therapy, to a pain clinic, or to a specialist for treatment of her alleged physical disorders. Tr. 18. As stated above, seeking limited medical treatment is inconsistent with claims of being unable to work. <u>See</u> <u>Nelson</u>, 946 F.2d at 1317; <u>James</u>, 870 F.2d at 450; <u>Rautio</u>, 862 F.2d at 179. While Plaintiff stated that she was unable to afford to see the doctor of her choice, she has not suggested that she sought medical treatment available to indigents. <u>See</u> <u>Riggins</u>, 177 F.3d at 693 (holding that failure to seek treatment offered to indigents detracts from a claim that a claimant did not seek medical treatment because of inadequate financial resources). The court notes that Dr. Cunningham did suggest in August 2005 and November 2005 that Plaintiff have physical therapy, although the record does not reflect that she sought such therapy. Also, Dr. Cunningham reported that Plaintiff could not have physical therapy due to cervicalgia. Additionally, Plaintiff had been referred to Dr. Walkowitz at a pain clinic. To the extent that the ALJ erred in stating that Plaintiff had not been referred to physical therapy or to a pain clinic, an "arguable deficiency in opinion-writing technique" does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. <u>See</u> <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Carlson v. Chater</u>, 74 F.3d 869, 871 (8th Cir. 1996); <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992). In Plaintiff's case any deficiency in regard to Plaintiff's being referred to physical therapy and/or a pain clinic does not affect the outcome as substantial evidence supports the ALJ's decision.

Fifth, the ALJ considered that there is no documented record of any significant, uncontrollable adverse side effect from medications Plaintiff has taken and that whatever adverse side effects she had

at various times were presumably eliminated or "at least greatly diminished by simple changes in either the type," size, or dosage of medication. Tr. 18. While Plaintiff complained in July 2005 of side effects from support hose, the record does not reflect that Plaintiff had side effects after the type of support hose prescribed was changed. The absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) ("We [] think that it was reasonable for the ALJ to consider the fact that no medical records during this time period mention [the claimant's] having side effects from any medication."); Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). The court notes that Plaintiff told Dr. Cunningham in August 2005 that use of sleeping pills allowed her to sleep. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

Sixth, the ALJ considered the medical records, including test results. Indeed, in regard to Plaintiff's alleged exertional limitations, as stated above, Dr. Cunningham reported in August 2005 that Plaintiff's motor strength was 5/5 in the biceps, triceps, wrist flexors and extensors; that her grip strength was "full and equal"; and that she had "3/5 motor strength in the deltoid musculature bilaterally." Further, Dr. Cunningham reported in August 2005 that x-rays showed the vertebral bodies were well maintained and that a CAT scan of Plaintiff's back did not show cord compression or gross compromise to the exiting nerve roots. See Gonzales v. Barnhart, 465 F.3d 890, 895 (8th

Cir. 2006) (holding that an ALJ may properly consider test results which are inconsistent with a claimant's complaints of disabling pain).

Based on the foregoing and considering the record as a whole, the court finds that the ALJ's consideration of Plaintiff's exertional and non-exertional limitations and his discrediting her complaints of disabling pain is based on substantial evidence. The court further finds that the ALJ's decision in this regard is consistent with the Regulations and case law.

## C.     Plaintiff's Past Relevant Work:

Plaintiff contends that the ALJ did not properly consider the demands of her past relevant work as a residential lending specialist upon concluding that she has the RFC to do so and that he should have consulted the Dictionary of Occupational Titles in this regard. In particular, Plaintiff contends that the ALJ did not determine whether Plaintiff's limitations preclude her from performing her past relevant work as a residential lending specialist.

First, as stated above, RFC is what a claimant can do despite her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e).  As set forth above, only after considering the medical evidence relevant to Plaintiff's alleged exertional and non-exertional impairments and other factors relevant to her credibility did the ALJ find that Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for standing or walking more than two hours out of an 8-hour day, lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally, having concentrated or excessive exposure to vibrations, or doing more than occasional climbing, kneeling, crouching, or crawling. There are no credible, medically-established mental or other non-exertional limitations.

Tr. 20.

The court finds that the ALJ's determination of Plaintiff's RFC is based on substantial evidence on the record.

Second, a claimant whose RFC permits her to perform her past relevant work is found not disabled at the fourth step of the applicable sequential analysis. 20 C.F.R. § 404.1520(e) ("We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work."); 20 C.F.R. § 404.1520(f) ("[W]e will compare our residual functional capacity assessment ... with the physical and mental demands of your past relevant work. ... If you can still do this kind of work, we will find that you are not disabled.")

Third, 20 C.F.R. § 404.1560 states, in relevant part:

(b) Past relevant work ...

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We *may* use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) *If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...*

(emphasis added).

Thus, in regard to the demands of a claimant's past relevant work, the Regulations state that the ALJ should ask a claimant for information about her past relevant work and that the ALJ *may* consult other sources. See Groeper v. Sullivan, 932 F.2d 1234, 1238 (8th Cir. 1991) (holding that "information [regarding past relevant work] will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source"). As such, the Regulations do not require the ALJ to obtain the testimony of a vocational expert or consider the Dictionary of Occupational Titles or other sources to determine the requirements of a claimant's past relevant work. See also Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). In the matter under consideration, Plaintiff described, in detail, the requirements of her past relevant work as a residential lending specialist. As such, the ALJ properly relied on Plaintiff's description. See 20 C.F.R. § 404.1560; Hogan, 239 F.3d at 962.

Indeed, an ALJ must make explicit findings regarding the demands of a claimant's past relevant work. Seiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (citing Groeper v. Sullivan, 932 F.2d 1234 (8th Cir. 1991)). See also S.S.R. 82-62. To the extent that Plaintiff contends that the ALJ failed to consider the mental demands of her prior work, where the ALJ determines that a claimant's "mental limitations [do] not significantly affect [her] ability to work," he need not consider the mental demands of the claimant's past work. Rose v. Apfel, 181 F.3d 943, 945 (8th Cir. 1999). Here the ALJ found that Plaintiff has no limitations or no more than a minimal limitation in terms of mental functioning and that Plaintiff has no credible medically established mental or other non-exertional limitations. As such, the ALJ was not required to consider the mental demands of Plaintiff's prior relevant work as a residential lending specialist. See id.

To the extent that the ALJ did not specifically address the exertional demands of Plaintiff's prior work, Plaintiff described these demands and, thus, the record reflects the demands of Plaintiff's

past relevant work as a residential lending specialist. Moreover, the ALJ's failure to cite specific evidence regarding the requirements of Plaintiff's past relevant work does not indicate that such evidence was not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

Plaintiff reported that her prior work as a residential lending specialist required that she walk one hour, stand one hour, sit six hours, and reach two and a half hours in a workday; that she did not have to stoop, kneel, crouch, or crawl in this job; that she handled, grabbed or grasped big and small objects seven and a half hours in a workday; that her lifting and carrying involved carrying a laptop computer to and from the office; that the heaviest thing she lifted was twenty pounds; and that she frequently lifted less than ten pounds in this job. Under such circumstances, Plaintiff's RFC, as determined by the ALJ, permits her to perform her past relevant work as a residential lending specialist. The court has found above that the ALJ's finding in regard to Plaintiff's RFC is supported by substantial evidence. The ALJ, therefore, properly found that because Plaintiff can perform her past relevant work she is not disabled. See 20 C.F.R. § § 404.1520(e)-(f), 404.1560(b). As such, the court finds that the ALJ's decision, in its entirety, is based on substantial evidence and that it comports with the Regulations and case law.

## VI.
## CONCLUSION

The court finds that the Commissioner's decision is supported by substantial evidence contained in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint is **DENIED**;

Doc. 1

**IT IS FINALLY ORDERED** that a separate Judgment shall be entered in favor of Defendant

and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>10th</u> day of February, 2009.